**J. B. FREEMAN et al., Appellants,**

v.

**Doyce NASH et al., Appellees.**

**No. 6966.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 5, 1968.

Seale & Stover, Jasper, for appellants.

Floyd Addington, Jasper, for appellees.

PARKER, Justice.

Plaintiffs, Nash and Cooper, partners doing business as Brazos Construction Company, recovered judgment against J. B. Freeman, doing business as Freeman Pump Company, and Pacific Indemnity Company in the sum of $2,931.21, together with interest. This judgment was based upon three contracts performed by Brazos for Freeman. Freeman subcontracted this construction to plaintiffs. The trial was to the court. The parties will be designated as in the trial court. The trial court made findings of fact and conclusions of law.

The statement of the case contained in the defendants' brief is:

This is a suit on an account, wherein the plaintiffs sued the defendants for the 10% retainage from three water system jobs, the amounts sued for being $938.-70 for the Reklaw job, $965.00 for the Sacul job, and $1,185.02 for the B.B.S. job, plus $1,000.00 attorneys' fees. The

defendants at all times acknowledged owing the $938.70 less $122.50 on the Reklaw job, and the $965.00 less $46.79 on the Sacul job. The Trial Court rendered judgment for the plaintiffs against the defendants for $816.20 on the Reklaw job, and for $918.21 on the Sacul job, and the defendants-Appellants make no complaint of that portion of the Judgment. The battleground in the case was the question of whether any money was owed on the BBS job, and the Trial Court's award of $897.50 on this job plus $300.00 attorneys' fees, is what gives rise to this appeal.

On April 28, 1965, Freeman Pump Company entered into three contracts with Brazos Construction Company. These contracts are in writing and provide that all agreements must be made in writing, that Brazos Construction Company would construct water plants for Freeman Pump Company at Sacul for $9,650, Reklaw for $9,387, and the B.B.S. Water Supply Corporation plant for $9,975, and that—

Payments to be made by the 10th of each month for all work completed and materials on site as the work progresses to the value of ninety per cent (90%) of all work completed. The entire amount of contract to be paid within ten (10) Days after completion.

The findings of Fact and Conclusions of Law are:

### FINDINGS OF FACT

1. On April 28, 1965, plaintiffs Doyce Nash and C. F. Cooper, and one of the defendants, J. B. Freeman, entered into three written contracts:

    (a.) To furnish services, labor, and material for construction of a water plant for the Sacul Water Supply Corporation at Sacul, Texas, in Nacogdoches County, Texas;

    (b.) The personal services, labor, and material for construction of a water plant for the Reklaw Water Supply Corporation at Reklaw, Texas, in Cherokee County, Texas;

    (c.) The personal services, labor, and material for the construction of a water plant for the B.B.S. Water Supply Corporation in Anderson County, Texas.

2. The defendant, J. B. Freeman, agreed to pay to the plaintiffs, $9,-650.00 for the Sacul contract, $9,-387.00 for the Reklaw contract, and $9,975.00 for the B.B.S. contract.

3. That the defendant, J. B. Freeman, has paid to the plaintiffs, $8,685.00 as partial payment under the Sacul contract, $8,448.00 as partial payment under the Reklaw contract, and $8,997.50 as partial payment under the B.B.S. contract.

4. That on April 28, 1965, as well as at all other times material hereto, the defendant, J. B. Freeman, had knowledge of the fact that the plaintiffs, Doyce Nash, and C. F. Cooper, were operating as a partnership under the name of Brazos Construction Company.

5. I further find that the plaintiffs substantially performed and completed the three contracts in question, that is, the Sacul, Reklaw, and B.B.S. contracts.

6. I further find that the defendant, J. B. Freeman, wrongfully interfered with the reasonable coordination and progress of the B.B.S. contract.

7. However, I do find that the defendant, J. B. Freeman, provided certain supervisory work to the plaintiffs which the plaintiffs accepted and, further, which the defendant, J. B. Freeman, expected some compensation as an offset against the B.B.S. contract in question.

8. I further find that the services by way of supervision furnished by

the defendant, J. B. Freeman, was of a value of $100.00 to the plaintiffs.

9. I further find that the said defendant, J. B. Freeman, performed no other services, labor, or furnished no other material for which he should receive any compensation or offset since the said J. B. Freeman wrongly interfered with the orderly coordination and reasonable completion of the B.B.S. contract.

10. I find that the said defendant, J. B. Freeman, wrongfully attempted to take over the completion of the B.B.S. contract on July 20, 1965.

11. I find that the defendant, J. B. Freeman, is obligated to pay to the plaintiffs an amount still due and owing on the Sacul contract in the amount of $918.21.

12. I find that the defendant, J. B. Freeman, is obligated to pay to the plaintiffs, $816.20 which is the amount still due and owing to the plaintiffs from the defendants upon the Reklaw contract.

13. I further find that the defendants breached the contract on the B.B.S. job and that the plaintiffs performed services, labor and furnished materials for which he is entitled to compensation on the basis of quantum meruit in that the plaintiffs furnished services, labor and materials for which they expected to be paid, and, further that the defendants accepted the benefit of the services, labor and materials furnished.

14. I find that it was necessary for the plaintiffs to hire attorneys to represent them in their dispute with the defendants and, further, that the attorneys for the plaintiffs should be entitled to receive $300.00 as attorney fees for the breach of contract in the quantum meruit recovery on the B.B.S. contract.

15. I further find that the plaintiffs are entitled to a judgment in the amount of $2,931.91, which includes the $816.20 for the Reklaw contract, $918.21 for the Sacul contract, $897.50 for the amount due and owing to the plaintiffs by virtue of the breach of the B.B.S. contract by the defendant, J. B. Freeman, as well as $300.00 attorney fees which I find are reasonable and necessary.

16. I further find that the defendant, Pacific Indemnity Company, was the bonding company or provided a bond whereby the faithful performance by Defendant J. B. Freeman toward the contracts of the plaintiffs was guaranteed and insured.

17. I further find that the defendant, Pacific Indemnity Company, had been regularly and duly served with citation herein and appeared at the trial hereof by and through its attorney of record.

18. I further find that the judgment entered herein shall have full force and effect against the said Pacific Indemnity Company in the event that execution against Defendant J. B. Freeman should be returned nulla bona.

19. I further find in the event that the defendant, J. B. Freeman, satisfies this judgment by payment thereof, then the defendant, Pacific Indemnity Company, would also be in all things released from this judgment.

CONCLUSIONS OF LAW

1. I find that a valid and existing contract was entered into by and between the plaintiffs, Doyce Nash and C. F. Cooper, doing business as Brazos Construction Company, and the defendant, J. B. Freeman, on

April 28, 1965, whereby the plaintiffs were to perform services, labor, and furnish materials for the construction of a water plant at Sacul, Texas; Reklaw, Texas, and the B.B.S. Water Supply Corporation in Anderson County, Texas.

2. I find that a partnership existed by and between Doyce Nash and C. F. Cooper by the name of Brazos Construction Company.

3. I find that the defendant, J. B. Freeman, did not deny the existence of a partnership by any written pleadings and a partnership existed as a matter of law at all times pertinent hereto.

4. Further, I find that the plaintiffs substantially performed all three of the contracts in question and the defendant, J. B. Freeman, had no legal right to attempt to take over the B.B.S. contract on July 20, 1965.

Defendants have 18 points of error contending there is no evidence, insufficient evidence or the evidence is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust to support Findings of Fact Nos. 6, 8, 9, 10 and 13 and the fact findings on which Conclusion of Law No. 4 and the judgment are based. Both defendants and plaintiffs brief all 18 points of error together.

It is undisputed that Brazos Construction Company was a partnership composed of Nash and Cooper. Partner Cooper was to handle construction and partner Nash was to bid on the contracts and handle such matters.

Defendants admitted liability to plaintiffs upon the Sacul contract in the amount of $918.21 and on the Reklaw contract in the amount of $816.20. It was stipulated that someone would testify that reasonable attorneys' fees would be one-third. It is undisputed that such amounts had not been paid by defendants to plaintiffs, that a law suit was required to obtain this money as well as the amount due plaintiffs on the B.B.S. contract and that all three jobs were completed.

The B.B.S. job was started in early July, 1965, and finished in August, 1965. With respect to Finding of Fact No. 7, there seems to be little doubt that Freeman interfered to some extent with the coordination and progress of the B.B.S. job. This finding is closely associated with the trial court's Finding No. 10 to the effect that Freeman attempted to take over the B.B.S. job on July 20, 1965 as reflected in a letter of Freeman to Nash of July 21, 1965. The only question without dispute is whether or not the "attempt" or "interference" was wrongful. This question can be examined in connection with Conclusion of Law No. 4 where the trial court decided appellant had no legal right to attempt to take over the B.B.S. job. After Nash was run off the job by Freeman, there was no change in personnel insofar as Brazos Construction Company was concerned. Cooper continued to supervise the job. His duties were the same. The only thing Freeman did toward completing the job was to ask Cooper to finish it. Freeman came by the job as often before Nash left as after. Materials, labor and all services were furnished by Brazos Construction Company and paid for by them. Freeman knew Cooper was the B.B.S. job supervisor. The first time plaintiffs knew of Freeman's claim of offset of $997.50 on the B.B.S. job was the day of trial. There was no cross-action or pleading to this effect. Freeman did not know when the B.B.S. job started or when Nash was asked to leave it. Freeman didn't know how much time he spent on the B.B.S. job. He furnished on materials the B.B.S. job. He furnished no materials show any expense. Freeman's only justification for withholding the money on the B.B.S. job was the claim that he had to take it over. He testified, swore and claimed he paid Brazos over four thousand

dollars. There is probative evidence that he only paid $3,650.26.

Brazos Construction Company was never taken off of the job. Doyce Nash was. At the time Freeman asked Nash to stay away from the job, he told Brazos that the difference in Freeman's cost of completing the plant and the bid price of $9,975.00 would be paid, but Freeman did not take over the contract. No evidence appears in this record to support any cost to Freeman. No pleadings ask for any such costs. There was a contract. It was completed by plaintiffs and Freeman did not pay the entire amount due.

According to Cooper, the portion of the Brazos Construction Company job was completed according to the plans and specifications when Nash was run off. No personnel changes were made after Nash was run off. Very little electrical work had been done. It was Freeman himself who asked the inspector for changes to be made just before Freeman wrote Nash to stay away from the job. There is evidence that Freeman was in Palestine before Nash was run off, rather than having moved to Palestine after July 21, 1965. There is evidence Freeman incurred no additional expense by reason of Nash avoiding the B.B.S. job at Freeman's request. Nash knew of no reason for Freeman's attempted take-over or Freeman's interference. After the contract work was completed, Nash asked for money due their partnership, and Freeman refused payment without reason. The only basis or explanation which he offered for his actions toward Nash was a copy of a letter from an inspecting concern seen for the first time at the trial. In view of the fact that the person purporting to have written the letter did not testify and did not make the inspection of the facts made the basis of the letter, it is understandable the court concluded the attempted take-over and the interference was wrongful. Under the contracts, facts and circumstances in evidence, Freeman had no right to take over the jobs. No wages were paid by Freeman on the B.B.S. job. He did not know when it was started, finished or when he claimed to have taken over. Freeman had no receipts for any money spent on services or wages. Brazos Construction did pay for the services and wages. The recovery by plaintiffs was upon contracts, although there were alternative pleadings of quantum meruit.

Considering only the evidence favorable to the court's findings, the no-evidence points are overruled. Considering the entire record, including evidence not detailed herein, the insufficient-evidence points are overruled.

Judgment of the trial court is affirmed.